UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

05-61363-CIV-BROWN
**THIS IS A CONSENT CASE**

ANDRE JOHNSON,

        Plaintiff,

vs.

AMERUS LIFE INSURANCE COMPANY
and RODNEY BROWN,

        Defendant.

_____/

AMERUS LIFE INSURANCE COMPANY
and RODNEY BROWN,

        Third Party Plaintiffs,

vs.

ANDRE MELTON,

        Third Party Defendant.

_____/

**DEFENDANT RODNEY BROWN'S MOTION TO COMPEL
THE DEPOSITION TESTIMONY OF JOHN RAYMOND[1]**

      Defendant, Rodney Brown ("Brown"), by and through his undersigned counsel, pursuant

to Federal Rule of Civil Procedure 37 and Local Rule 7.1 hereby moves to compel the deposition

testimony of John Raymond and in support thereof states:

_____

[1] Although this Court's Order Setting Cause for Jury Trial states that no Motions may be filed after March 9, 2007, pursuant to this Court's Order Re: Motion for Protective [DE 171] order dated February 27, 2007, John Raymond, Jr.'s continued deposition took place on March 12, 2007.

05-61363-CIV-COOKE

## I.    INTRODUCTION:

On or about March of 2004, Plaintiff, Andre Johnson, through his agent Andre Melton hired attorney John Raymond, the brother of Plaintiff's attorney Mark Raymond, to represent him in connection with estate and tax planning.  *See* deposition of John Raymond, Volume I, taken on November 20, 2006, p. 45.  Thereafter, John Raymond had various communications with Hartford insurance agent Richard Scalesse and Bank of America representative Aaron Parthemer.  *See* Deposition of Aaron Parthemer, p. 55-56; Deposition of Richard Scalesse, p. 106.  At some point between March and July of 2004, it was decided that the Plaintiff would no longer keep the Amerus policies.  *See* Deposition of Aaron Parthemer, p. 66-67; 111-112. Indeed, Plaintiff ultimately purchased an 18 million dollar Hartford life policy and apparently, at the behest of Mr. Raymond, Mr. Scalesse, and Mr. Parthemer, allowed the policies to lapse. Throughout John Raymond's representation of the Plaintiff, he sent various letters to his client in which he carbon copied Richard Scalesse and or Aaron Parthemer.  *See* Letters attached hereto as composite exhibit "A."

During the deposition of John Raymond on November 20, 2006 and the continuation of his deposition on March 12, 2007, he repeatedly asserted the attorney-client privilege when asked questions about his communications with Scalesse and Parthemer.  *See* Deposition of John Raymond taken November 20, 2006, p. 137-142; Deposition of John Raymond, Volume II, taken March 12, 2007, p. 6-46.  He claimed that Scalesse and Parthemer were his agents; therefore, his communications with the two of them were protected pursuant to the attorney-client privilege and work product privileges.  *Id.*

John Raymond's communications with Scalesse and Parthemer do merit the protections afforded by the attorney-client as these discussions were not in furtherance of rendering legal

2

services to the Plaintiff nor were Scalesse or Parthemer necessary for the transmission of the communication.   Alternatively, and most telling, any attorney-client privilege and or work-product privileges that applied to these communications were waived by Plaintiff's selective disclosure of self-serving communications throughout the course of discovery regarding the Amerus and Hartford policies.   Therefore, John Raymond should be compelled to testify regarding his conversations with Scalesse and Parthemer to the extent such communications pertained to the life insurance policies.

## II.     ARGUMENT

1.     <u>John Raymond's communications with Scalesse and Parthemer are not protected pursuant to the attorney-client privilege and must therefore be disclosed.</u>

John Raymond should be compelled to testify regarding his conversations with Scalesse and Parthemer as these are not attorney-client privileged communications.  Pursuant to Federal Rule of Evidence 501, whether a communication is privileged will be governed by the principles of state common law when state law supplies the rule of decision, such as in cases of diversity jurisdiction. *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1414 (11th Cir. 1994); *Gab Business Servs., Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir. 1987). Specifically, the attorney-client privilege protects those discussions between an attorney and a client and vice versa for the purpose of securing legal advice or assistance. *Id.*  The burden to establish the existence of the privilege will be upon the party who seeks to assert it.  *Black v. Florida*, 920 So. 2d 668, 671 (Fla. 5th DCA 2006).

The attorney-client privilege only attaches when (1) the holder of the privilege sought to become a client, (2) communicates with a person who is a member of the bar or a subordinate thereof and such person is acting in his or her capacity as an attorney, (3) the communication relates to facts of which the attorney was informed for the purpose of proving a legal opinion or

05-61363-CIV-COOKE

assistance with a legal proceeding, and (4) the client has not waived the privilege. *Skorman v. Hovnanian of Florida, Inc.*, 382 So. 2d 1376, 1377-78 (Fla. 4th DCA 1980). Florida Statute 90.502 codifies the common law attorney-client privilege and states that these communications are confidential only if they are not intended to be disclosed to third persons other than "(1) those to whom disclosure is in furtherance of the rendition of legal services to the client" or "(2) those reasonably necessary for the transmission of the communications." *Black*, 920 So. 2d at 670. In the instant case, the communications between Parthemer and Scalesse were neither in furtherance of the rendition of legal services or necessary for the transmission of the communication and are, therefore, not privileged as a matter of law.

A.   The communications between John Raymond, Parthemer, and Scalesse were not in furtherance of the rendition of legal services.

Any statements made regarding matters unconnected with the rendition of legal services are not considered privileged communications. *Cunningham v. Appel*, 831 So. 2d 214, 216-17 (Fla. 5th DCA 2002). An attorney's mere presence during a communication does not render it privileged bur rather, the communication must relate to the acquisition of legal services and must have a confidential character. *Hoch v. Rissman, Weisberg, Barrett*, 742 So. 2d 451, 458 (Fla. 5th DCA 1999). Therefore, when a lawyer is consulted for business matters as opposed to legal matters or the lawyer is retained to act as an agent for a non-legal activity, those communications are not privileged. *Skorman*, 382 So. 2d at 1378. *See also Pollock v. United States*, 202 F. 2d 281, 286 (5th Cir. 1953)("Where an attorney is a mere scrivener or the transaction involves a simple transfer of title to real estate and there is no consultation for legal advice, it has been held that communications to an attorney are not privileged").

Similarly, "[a] lawyer's involvement in, or recommendation of, a transaction does not place a cloak of secrecy around the incidents of such a transaction." *Boyles v. Mid-Florida*

*Television Corp.*, 431 So. 2d 627, 639 (Fla. 5th DCA 1983).  In *Boyles*, the attorney-client privilege was asserted to avoid disclosing the rationale behind certain television programming decisions.  *Id.*  The trial court's failure to compel such testimony was in error as these were not protected communications.  *Id. See also Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 447 (S.D. Fla. 1980)(holding that correspondence between an attorney and a client containing business and economic advice was not an attorney-client privileged communication).

In the instant case, the communications between John Raymond, Scalesse and or Parthemer were not for the purpose of rendering legal services to the Plaintiff.  Rather, the Plaintiff's decision to switch from an Amerus life insurance policy to a Hartford policy was a business decision.  John Raymond was not involved in this decision as a legal advisor but rather, he was consulted to assist the Plaintiff in making an investment decision as to related insurance policies.  In making this determination, John Raymond enlisted the services of Scalesse, an insurance agent, who was asked to evaluate and describe the Amerus insurance policy and ultimately offered the Plaintiff the Hartford policy.  *See* Deposition of Richard Scalesse, p. 92-95.

Likewise, Parthemer was involved as a financial advisor to advise the Plaintiff on investment decisions, including but not limited to life insurance policy options.  *See* Deposition of Aaron Parthemer, p. 42-43 ("After delivery of the policies to John Raymond, and discussion with Richard Scalesse, and understanding the differences on the policies, certainly my input was given at that point, just as far as understanding the policies, not to the level of litigation, but to understand the policies.").  Plaintiff, through Andre Melton, did not communicate with John Raymond, Scalesse, or Parthemer for the rendition of legal services as it relates to the cancellation of the Amerus life insurance policy and application for the Hartford policy.  Rather,

05-61363-CIV-COOKE

these were business and investment decisions; thus, Mr. Raymond's involvement in this transaction cannot place a cloak of secrecy around the incidents that surrounded it. Accordingly, John Raymond should be compelled to testify about his communications with Parthemer and or Scalesse as it relates to the change in insurance policies.

### B.   Parthemer and Scalesse were not necessary for the transmission of the communications.

The privilege may extend beyond communications between the attorney and the client when made to necessary intermediaries or agents through which the communication is made. G*erheiser v. Stephen*, 712 So. 2d 1252, 1254-55 (Fla. 4th DCA 1998). "A communication, then, by *any form of agency* employed or set in motion by the client is within the privilege. This of course includes communications through an *interpreter*, and also communications *through a messenger* or any other *agent of transmission*, as well as communications originating with the client's agent and made to the attorney." *Id.* (emphasis in original). In *Gerheiser*, communications between the defendant's attorney and his mother were privileged because the defendant's mother was necessary for the transmission of the communications as the defendant was in jail and could not retain an attorney. *Id. But see Black*, 920 So. 2d at 670 (finding that the defendant's sister was not necessary to the transmission of communications with his attorney despite that the defendant was in jail because he was able to call his counsel without her assistance); *Falco v. Copeland*, 868 So. 2d 659, 660 (Fla. 1st DCA 2004)(finding that there was insufficient information in the record as to whether the plaintiff's parents were her agent for purposes of asserting the attorney-client privilege).

In this case, neither Scalesse nor Parthemer were necessary for the transmission of communications between Andre Melton and John Raymond. This is evident in that Mr. Raymond was able to meet privately with Mr. Melton without requiring the assistance of either

05-61363-CIV-COOKE

Scalesse or Parthemer.  *See* Deposition of John Raymond taken November 20, 2006, p. 77. Moreover, neither of them acted as interpreters, messengers, or agents in the transmission of communications.  Unlike in *Gerheiser*, where the client was unable to communicate with his counsel, Parthemer and Scalesse were not necessary for Andre Melton and John Raymond to communicate.  Moreover, John Raymond communicated with Scalesse and Parthemer outside of the presence of his client, which is further evidence that their involvement was not necessary for the transmission of attorney-client privileged communications.

### C.      The communications were not intended to be confidential as they were disclosed to third persons.

In addition, discussions between an attorney and the client must have a confidential character meaning that they are not intended to be disclosed to third persons.  *Johnston v. Florida*, 497 So. 2d 863, 867 (Fla. 1986).  In *Johnston*, the client revealed the existence of an attorney-client letter to an investigator and revealed the content of the letter to his girlfriend.  *Id.* The client's disclosure of the communications to third persons nullified the privilege.  *Id.; Pitney-Bowes, Inc.*, 86 F.R.D. at 448 (holding that a letter that carbon copied 12 individuals other than the client was not protected pursuant to the attorney-client privilege).

Likewise, John Raymond's communications pertaining to the insurance policies were not confidential in that they were disclosed to third persons who were not necessary for the rendition of legal services or for the transmission of the communications.  In letters to Plaintiff and his agent, Andre Melton, John Raymond carbon copied Scalesse and or Parthemer thereby disclosing the content of these privileged communications to third persons.  *See* composite Exhibit "D."  In addition, these letters were produced in the course of discovery.  This is further evidence that the claim of attorney-client privilege is unsupported by the facts as it is missing the essential element of confidentiality.

7

05-61363-CIV-COOKE

It is John Raymond and Plaintiff's burden to establish that a communication is privileged. However, the evidence is that (1) the communications between John Raymond and Parthemer and or Scalesse regarding the life insurance policies were not for the rendition of legal services; (2) Parthemer and Scalesse were not necessary intermediaries for the transmission of information, and (3) the communications were not intended to be confidential as they were disclosed to third parties.  Accordingly, John Raymond must be compelled to testify as to the content of these communications.

**2.      Alternatively, even if the communications between John Raymond, Scalesse and or Parthemer were attorney-client or work-product privileged, Plaintiff's selective disclosure of privileged communications has waived the privilege to all communications on the same subject.**

Plaintiff's disclosure of selected communications between John Raymond, Parthemer and or Scalesse, such as the communications concluding that the Amerus life insurance policy was unsuitable for the Plaintiff or that Defendant Brown misrepresented the tax deductibility of the premiums, warrants a waiver of the attorney-client and work-product privileges for all communications regarding the Amerus and Hartford policies.  The doctrine of selective disclosure, also known as waiver by implication, reflects the common law's position that the attorney-client privilege "was intended as a shield, not a sword."  *Cox*, 17 F.3d at 1417.  A party may not disclose some selected communications for self-serving purposes while claiming privilege as to other damaging communications. *Id.*; *Int'l Tel. & Telegraph Corp. v. United Tel. Co. of Florida*, 60 F.R.D. 177, 185 (M.D. Fla. 1973).  *See also Johnson v. Florida*, 608 So. 2d 4, 10 (Fla. 1992)("A defendant, however, cannot use the attorney-client privilege selectively to elicit favorable testimony and to block unfavorable testimony").

If a client chooses to disclose privileged communications, the client has waived the privilege and cannot insist upon the silence of his or her attorney based upon the privilege. *Id.*

05-61363-CIV-COOKE

Selective disclosure results in waiver when a client or the attorney testifies regarding privileged communications or when a party introduces portions of privileged correspondence.  *Id.* at 186. In the former circumstance, the party waives all privileged communications on the same subject while in the latter, the production of all correspondence may be demanded.[2]  *Id.*  In the interest of fairness, when a party discloses a self-serving privileged statement, waiver of the privilege as to communications on the same subject is warranted so as to allow cross-examination, rebuttal, and impeachment of the disclosing party's testimony.  *Hoyas v. Florida*, 456 So. 2d 1255, 1228-29 (Fla. 3d DCA 1984)(finding that the defendant waived the attorney-client privilege when he testified regarding a significant part of his attorney-client communications in which he told his attorney that he "didn't do it").

However, as discussed above, when a party waives the privilege, the party only does so for those communications on the same matter.  *Coates v. Akerman, Senterfitt & Eidson, P.A.*, 940 So. 2d 504, 511 (Fla. 2d DCA 2006).  *See also Courville v. Promedco of Southwest Florida*, 743 So. 2d 41, 42 (Fla. 2d DCA 1999)(finding that a party's disclosure regarding the terms of a noncompete agreement only waived the privilege as to communications pertaining to the noncompete agreement but not any other unrelated communications).

In this case, John Raymond has testified that the Amerus life insurance policies were unsuitable for the Plaintiff, that Brown misrepresented the tax deductibility of the premiums, and that he came to these conclusions based on information provided to him, in part, by Scalesse and Parthemer.  *See* Deposition of John Raymond, Volume I, taken November 20, 2007, p. 140-149. However, John Raymond has asserted the attorney-client and work-product privileges and has

---

[2]  The Defendants subpoenaed all billing and time entries that evidence the legal services that  John Raymond provided to the Plaintiff.  In producing these documents, Plaintiff only redacted selected portions of those billing entries.  *See* redacted billing entries, attached hereto as composite Exhibit "B."

05-61363-CIV-COOKE

refused to testify about the substance of all such conversations between these individuals. *See* Deposition of John Raymond, Volume II, taken on March 12, 2007, p. 6-46. In doing so, Plaintiff has chosen to selectively disclose self-serving statements while asserting the privilege for more damaging communications. John Raymond's assertion of the privilege is the classical example of improperly using the attorney-client privilege as a sword rather than a shield.

Therefore, Plaintiff's disclosure of certain communications, whether by producing arguably privileged letters in the course of discovery, *see* composite Exhibit "A", or by testifying about self-serving communications, has rendered any privilege on the subject of the Amerus and Hartford policies waived. It is in the interest of justice to allow Brown to complete the deposition of John Raymond so that he can effectively cross-examine, impeach, or rebut the statements of John Raymond at trial. *See Hoyas*, 456 So. 2d at 1228-29. Otherwise, Brown will be severely prejudiced if John Raymond and the Plaintiff are permitted to use the attorney-client privilege as both a sword and shield. Accordingly, to the extent this Court deems the communications between John Raymond and Parthemer and or Scalesse privileged, that privilege has been waived and John Raymond should be compelled to testify as to the substance of those communications.

WHEREFORE Defendant Rodney Brown requests that this Court enter an order finding that the communications between John Raymond, Scalesse and or Parthemer were not privileged, or alternatively, finding that any privilege has been waived by Plaintiff's selective disclosure of privileged communications thereby compelling John Raymond's testimony on those subjects and for those questions for which he asserted the privilege and any other relief this Court deems just and proper.

05-61363-CIV-COOKE

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned counsel for Brown certifies that prior to filing this Motion, in a good faith effort to resolve the issues raised herein, he e-mailed counsel for Plaintiffs but has not heard back from them as of the time of filing this Motion.  However, as indicated by the objections posed during the continued deposition of John Raymond, it likely they will oppose this Motion.

Respectfully submitted,


s/ STUART L. COHEN
STUART L. COHEN
Florida Bar No. 0927066
ERIC L. McALILEY
Florida Bar No. 0174343
RUMBERGER, KIRK & CALDWELL
Brickell Bayview Centre, Suite 3000
80 S.W. 8th Street (33130-3037)
Post Office Box 01-9041
Miami, Florida  33101
Telephone:  (305) 358-5577
Telecopier:  (305) 371-7580
Email: emcaliley@rumberger.com

***Attorneys for Rodney Brown***

05-61363-CIV-COOKE

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on this 6th day of April, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other manner of those counsel who are not authorized to receive electronically Notices of Electronic Filing.

s/ STUART L. COHEN
_____
STUART L. COHEN
Florida Bar No. 0927066
scohen@rumberger.com
ERIC L. McALILEY
Florida Bar No. 0174343
emcaliley@rumberger.com
RUMBERGER, KIRK & CALDWELL
Brickell Bayview Centre, Suite 3000
80 S.W. 8th Street (33130-3037)
Post Office Box 01-9041
Miami, Florida  33101
Telephone:  (305) 358-5577
Telecopier:  (305) 371-7580
**Attorneys for Rodney Brown**

05-61363-CIV-COOKE

## SERVICE LIST

Andre Johnson v. AmerUS Life Insurance Company and Rodney Brown
Case No. 05-61363-CIV-COOKE/Brown

Mark F. Raymond, Esq.
MRaymond@BroadandCassel.com
Cynthia Morales, Esq.
cmorales@broadandcassell.com
*Attorneys for Plaintiff*
Broad and Cassel
One Biscayne Tower, 21st Floor
2 South Biscayne Boulevard
Miami, Florida 33131

Anthony H. Pelle, Esq.
apelle@carltonfields.com
Emmet J. Schwartzman, Esq.
eschwartzman@carltonfields.com
*attorneys for AmerUs*
Carlton Fields, P.A.
P.O. Box 019101
Miami, Florida 33131-9101

547924